# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSE VIERA-RIVERA,

Defendant.

CRIMINAL NO. 94-391 (SCC)

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Defendant Jose Viera-Rivera (hereinafter "Viera-Rivera" or "Defendant") moves the Court, through counsel, to reduce his life sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Docket No. 140).[1] The United States filed a response in opposition, (Docket No. 147), to which the Defendant replied. (Docket No. 150). This matter has been referred to me by the presiding District Judge for report and recommendation. (Docket No. 133).

For the reasons set forth below, I recommend that Defendant's motion for reduction of sentence be GRANTED.

---

[1] This is a counseled supplement to the *pro se* compassionate release motion that Viera-Rivera filed in 2021. (Docket No. 95). I will focus on the arguments advanced by Defendant through counsel.

1

## II. BACKGROUND[2]

A Grand Jury sitting in this district returned an indictment against Viera-Rivera charging him with carjacking resulting in death in violation of 18 U.S.C. § 2119(3) (Count One) and using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). (Docket No. 10). These charges arose out of an incident that took place on the evening of August 4, 1994. On that date, Puerto Rico Police Officer Raul Morales-Cotte and Irma Ramos-Gonzalez were parked at a beach in Punta Santiago, Humacao, Puerto Rico. As Morales-Cotte stepped out of his vehicle to get an alcoholic beverage from the trunk of the car, he was approached by two individuals: Viera-Rivera and an unidentified male. After hearing the exchange of a few words, Ramos-Gonzalez heard two detonations from a firearm and saw Morales-Cotte fall. Ramos-Gonzalez screamed and attempted to exit the vehicle but was unable to do so.

Viera-Rivera entered the car through the driver's side. The unidentified male sat behind Ramos-Gonzalez. She was told not to look at them or they would kill her. Realizing that Morales-Cotte was a police officer because they saw handcuffs in the car, Viera-Rivera asked Ramos-Gonzalez to help them find the service firearm and threatened her again. They drove off with her, but eventually dropped Ramos-Gonzalez off in a secluded area, not before stealing her jewelry and handcuffing her to a guardrail. Viera-Rivera and the other individual left in the victim's car. Ramos-Gonzalez was able

---

[2] The narration of the facts of the case is taken from the Presentence Investigation Report ("PSR") filed at Docket No. 144.

2

to free herself and asked for help. She later identified Viera-Rivera in a photographic line-up. Viera-Rivera was arrested on December 7, 1994, and has remained under custody since.

Viera-Rivera went to trial and on January 17, 1996, a jury found him guilty of the charged offenses. (Docket No. 56). On June 7, 1996, Viera-Rivera was sentenced to life imprisonment as to Count One and 60 months as to Count Two to be served consecutively to each other. (Docket No. 70). If ever released, Defendant must serve a five-year term of supervised release. (*Id.*).

The First Circuit affirmed Viera-Rivera's conviction and sentence on direct appeal. *See United States v. Viera-Rivera*, Appeal No. 96-2011, 1997 U.S. App. LEXIS 18225 (1st Cir. July 23, 1997); *see also* Docket Nos. 81 and 82. His efforts to obtain post-conviction relief have been unsuccessful. *See Viera-Rivera v. United States*, Civil No. 98-1587 (PG) (denying habeas petition under 28 U.S.C. § 2255); *see also Viera-Rivera v. United States*, No. 15-1204 (1st Cir. Dec. 23, 2015) (denying petition for leave to file a second or successive § 2255 motion); and *Viera-Rivera v. United States*, No. 16-1514 (1st Cir. Apr. 2, 2019) (denying petition for leave to file a second or successive § 2255 motion under *Johnson v. United States*). (Docket No. 93).

On March 19, 2021, Viera-Rivera filed a *pro se* motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). (Docket No. 95).[3] The Government filed a response in

---

[3] In addition to making arguments related to the Covid-19 pandemic, the *pro se* motion raised many of the same reasons that counsel put forth in the supplemental motion for compassionate release. Again, because the supplemental motion filed by appointed counsel has further developed these arguments, my analysis will focus only on the claims asserted in the supplemental motion.

opposition and Viera-Rivera submitted a *pro se* reply. (Docket Nos. 101 and 115). Additional supplemental filings and the Government's responses to them are in the record but need not be specifically outlined here. (Docket Nos. 104, 109, 112, 113, 114, 117, 118, 120, 121, and 123). Many, if not all these additional pleadings have been rendered moot in any event because, as noted below, counsel has been appointed. (Docket No. 132).

On December 5, 2023, Viera-Rivera filed a motion requesting the appointment of counsel from the Federal Public Defender for the District of Puerto Rico ("FPD"). (Docket No. 124). The Court granted the request and appointed the FPD on December 20, 2023. (Docket Nos. 125, 126). The FPD was ordered to file a supplemental motion for compassionate release and the matter was referred to the undersigned for report and recommendation. (Docket Nos. 132 and 133). The counseled supplemental motion was filed on November 7, 2024. (Docket No. 140). The United States opposed on January 6, 2025. (Docket No. 147). The Defendant replied on January 9, 2025. (Docket No. 150).

### III. APPLICABLE LAW AND DISCUSSION

In his supplemental petition Viera-Rivera contends that a sentence reduction to time served is warranted under 18 U.S.C. § 3582(c)(1)(A)(i). His principal argument is that his sentence is unusually long, which in the compassionate release context and in sentencing guidelines parlance, means that a nonretroactive change in the law has created a gross disparity between his life sentence and the sentence that would be imposed today after full consideration of his individualized circumstances. U.S.S.G. § 1B1.13(b)(6). While his guideline sentencing range continues to be life imprisonment, Viera-Rivera says that his sentence was imposed when the guidelines were mandatory.

4

In a post-*Booker*[4] advisory guidelines regime, he asserts that his sentence would have been significantly reduced through a variance considering, among other reasons, his youth at the time of the offense, the circumstances of his upbringing, post-sentencing rehabilitation, and the disparity between his sentence and average sentence for murder, both nationally and in Puerto Rico. Viera-Rivera highlights that he has a solid release plan and maintains that he is no longer a danger to the community under the factors set forth in 18 U.S.C. § 3142(g). Further, according to him, a reduction in sentence would be consistent with both the applicable policy statement (U.S.S.G. § 1B1.13) and the 18 U.S.C. § 3553(a) factors. He thus asks that a hearing be granted at which he will formally request a sentencing modification resulting in his immediate release.

In opposition, the Government first argues that the United States Sentencing Commission exceeded its authority in enacting U.S.S.G. § 1B1.13(b)(6), the guideline section Viera-Rivera relies on. The Government acknowledges, however, that First Circuit precedent likely forecloses this argument. Nevertheless, the Government wishes to preserve the issue for further review.[5] The United States next avers that even if subsection (b)(6) represented a valid exercise of the Commission's delegated authority, Viera-Rivera has failed to establish extraordinary and compelling reasons for a sentence

---

[4] *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 261 (2005).

[5] Judge Woodcock of the District of Maine recently rejected the same facial challenge to U.S.S.G. § 1B1.13(b)(6) in *United States v. Brichetto*, No. 2:03-cr-00024-JAW-1, 2025 WL 509835, 2025 U.S. Dist. LEXIS 26803, at *30-32 (D. Me. Feb. 14, 2025); *see also United States v. Trenkler*, 47 F.4th 42, 47 (1st Cir. 2022) (*citing United States v. Ruvalcaba*, 26 F.4th 14, 25 (1st Cir. 2022)) ("[T]he only exception to what may constitute an extraordinary and compelling reason, as made explicit by Congress, is rehabilitation."). I agree with the Court's reasoning in *Brichetto*.

5

reduction under said section. The Government specifically claims that Defendant cannot show a gross disparity between his sentence and that of other similarly situated individuals. The Government also briefly responds to Defendant's age and rehabilitation arguments asserting that while incarcerated, and well after he was in his thirties, Viera-Rivera continued to incur in disciplinary violations and acts of violence, including an attempted murder in 2012. Based on this, the Government contends that Defendant is still a danger to the community and that the § 3553(a) factors do not support a sentence modification.

### A. Legal Framework

The so-called compassionate release statute allows a court acting on a defendant-filed motion "after the defendant has exhausted all administrative rights to appeal" and as long as such reduction is consistent "with applicable policy statements issued by the Sentencing Commission"—to

> reduce [a] term of imprisonment (and… impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction; . . .

18 U.S.C. § 3582(c)(1)(A)(i). This statute is one of the very few exceptions to the rule that once imposed, a term of imprisonment shall not be modified. *United States v. Saccoccia*, 10 F.4th 1, 3 (1st Cir. 2021).

To grant a motion for sentence reduction, the court must find that a defendant has established three things: (1) that extraordinary and compelling reasons warrant a

sentence reduction; (2) that the reduction is consistent with the applicable policy statements issued by the Sentencing Commission; and (3) that relief is appropriate under the circumstances of the case after considering the applicable 18 U.S.C. § 3553(a) factors. *See United States v. Quiros-Morales*, 83 F.4th 79, 84 (1st Cir. 2023). Whether the reasons advanced by the defendant are extraordinary and compelling is "guided by the plain meaning of those terms." *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021). "The plain meaning of 'extraordinary' suggests that a qualifying reason must be a reason that is beyond the mine-run either in fact or in degree . . . . By the same token, the plain meaning of 'compelling' suggests that a qualifying reason must be a reason that is both powerful and convincing." *Id.* (citations omitted).

Prior to November 1, 2023, and because the Sentencing Commission had not issued any policy statements applicable to prisoner-initiated compassionate release motions, the First Circuit held that district courts had discretion to "consider any complex of circumstances raised by a defendant, as forming an extraordinary and compelling reason warranting relief." *United States v. Ruvalcaba*, 26 F.4th at 28. Subsequently, in *United States v. Trenkler*, 47 F.4th at 47-48, it was clarified that the holding in *Ruvalcaba* meant that district courts "may conduct a holistic review to determine whether the individualized circumstances [of the defendant], taken in the aggregate, present an 'extraordinary and compelling' reason to grant compassionate release," including alleged sentencing errors. The "any complex of circumstances" approach is shaped, however, by the arguments advanced by the defendant, such as when the defendant presents separate arguments in support of his request rather than multiple

7

arguments in favor of the sentence reduction. *United States v. Gonzalez*, 68 F.4th 699, 706 (1st Cir. 2023).

It must be noted that the Sentencing Commission's policy statement regarding defendant-filed motions for sentence reductions is now in effect. *See* U.S.G.G. § 1B1.13 (Nov. 1, 2023). Consequently, the court "must take heed of" the policy statement as noted in *United States v. Rivera-Rodriguez*, 75 F.4th 1, 18 n.22 (1st Cir. 2023), and consider its scope in deciding what constitutes an extraordinary and compelling reason. *United States v. Quiros-Morales*, 83 F.4th at 84.

The Commission has identified six circumstances that individually or in combination may provide extraordinary and compelling reasons for a reduction in sentence. U.S.S.G. § 1B1.13(b). These are: certain medical circumstances such as a terminal illness or inability to receive medical care while incarcerated, *id*. § 1B1.13(b)(1); the defendant's age, *id*. § 1B1.13(b)(2); the defendant's family circumstances, *id*. § 1B1.13(b)(3); the defendant having been the victim of sexual or physical abuse by or at the direction of a correctional officer, *id*. § 1B1.13(b)(4); a catch-all provision of any other reason or combination of reasons similar in gravity to those described in (1) through (4), *id*. § 1B.13(b)(5); and if the defendant received an unusually long sentence, *id*. § 1B1.13(b)(6). The policy statement also requires the court to make a finding that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Factors to be considered in the dangerousness determination include the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of the person, and the nature and

seriousness that the release of the person would pose to any person or the community. 18 U.S.C. § 3142(g).

With the above legal framework in mind, I discuss whether Viera-Rivera has met his burden to show that he is legally entitled to, and deserving of, a reduction of his life sentence.

### B. Exhaustion of Administrative Remedies

Before discussing the merits of Viera-Rivera's claims, a threshold matter must be addressed. Prior to entertaining a defendant-filed motion for compassionate release, the court must be satisfied that the defendant fully exhausted administrative remedies, or that 30 days elapsed without the director of the Bureau of Prisons having brought such a motion on the defendant's behalf despite a request to the warden of the defendant's facility, whichever is earlier. *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Texeira-Nieves*, 23 F.4th 48, 52-53 (1st Cir. 2022).

In this case, Viera-Rivera blanketly asserts that he has exhausted administrative remedies. (Docket No. 140 at 8). He submits that on February 8, 2021, he requested a reduction of sentence under the First Step Act ("FSA"). (*Id.*). The request was denied by the warden the very next day, February 9, 2021. (Docket No. 140-4). However, it should be noted that the request appears to be one for Federal Time Credit ("FTC") under the FSA, and not a request that the warden file a motion for reduction of sentence on his behalf as required by 18 U.S.C. § 3582(c)(1)(A). *See United States v. Nieves*, 615 F. Supp. 3d 73, 75 (D.P.R. 2022) (explaining that to exhaust administrative remedies, defendants must first request that the BOP file a motion for compassionate release on their behalf.). Exhaustion will be deemed complied with if upon receiving a response from the warden

9

denying the request, the defendant fully exhausts all administrative rights to appeal by following the BOP's Administrative Remedies Procedure. *Id*. (*citing* 28 C.F.R. § 542, subpart B, and 28 C.F.R. § 571.63(a)). Alternatively, a defendant can file the compassionate release motion in the district court if his request to the warden has gone unanswered for more than thirty (30) days. *United States* v. *Quiros-Morales*, 83 F.3d at 84.

Again, it is not clear that Viera-Rivera specifically requested that the warden from his facility file a compassionate release motion on his behalf. Assuming favorably to Viera-Rivera that it can be construed as such, the exhibit submitted at Docket No. 140-4 shows that said request was denied the next day. There is no evidence in the record that after said denial, Viera-Rivera followed the BOP's administrative remedies procedure. Where, as here, the warden of the facility responds to the compassionate release request within 30 days, a defendant **must** exhaust all administrative remedies. *Nieves*, 615 F. Supp. 3d at 76 (emphasis ours). Therefore, I find that Viera-Rivera has not shown that he fully exhausted his administrative rights to appeal as required by § 3582(c)(1)(A).

Notwithstanding he above finding, dismissal of the petition is not warranted in this case. The exhaustion requirement is not a jurisdictional bar; rather, it is a nonjurisdictional claim-processing rule. *United States v. Texeira-Nieves*, 23 F.4th at 53 ("In our judgment . . . [the] exhaustion requirement is not a jurisdictional limitation . . . ."). As such, the government can waive it "either expressly or by failing to raise it as a defense." *United States v. Newton*, No. 17-cr-0073-JAW, 2023 WL 8529442; 2023 U.S. Dist. LEXIS 218588 (D. Me. Dec. 8, 2023) (citations omitted); *see also United States v. Trinidad-Jorge*, No. Criminal No. 16-282 (ADC)(HRV), 2024 WL 1621069,

10

2024 U.S. Dist. LEXIS 72078 at *3, n.2 (D.P.R. Apr. 15, 2024) (same); *United states v. Waite*, No. 2:18-cr-00113-GZS, 2022 WL 2966505, 2022 U.S. Dist. LEXIS 133073, at *4 (D. Me. July 27, 2022) (exhaustion is mandatory unless waived or conceded by the Government).

In its opposition to the supplemental motion for reduction of sentence at Docket No. 147, the Government did not raise failure to exhaust as a defense. Accordingly, I find that the Government has waived the exhaustion defense and that the compassionate release motion is properly before the court.

**C. Discussion**

### 1. *Extraordinary and Compelling Reasons*

As stated above, Viera-Rivera's main argument seeking a sentence modification is that he is serving an unusually long sentence as defined by the Sentencing Commission in U.S.S.G. § 1B1.13(b)(6). That section of the relevant policy statement specifically provides that:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6). Tracking the language of the quoted section, a movant is eligible for a sentence reduction if he or she is able to demonstrate: "(1) the defendant received an 'unusually long sentence,' (2) a change in the law has produced a 'gross disparity

11

between the sentence being served and the sentence likely to be imposed' at the time of the motion's filing; (3) the defendant has 'served at least ten years of the term of imprisonment;' and (4) 'full consideration of the defendant's individualized circumstances' support a finding of extraordinary and compelling circumstances." *United States v. Cruse*, No. 3:12cr146, 2024 WL 3257142, 2024 U.S. Dist. LEXIS 115877, at*9 (W.D.N.C. July 1, 2024) (*quoting* U.S.S.G. § 1B1.13(b)(6)).

In this case, there is no dispute that the Defendant has served at least 10 years of his sentence. In fact, he has served over 30 years in prison. Moreover, a life sentence is certainly unusually long. Thus, the determination of eligibility turns on whether there has been a nonretroactive change in the law that creates a gross disparity between the sentence Viera-Rivera received and the sentence he would likely receive today after full consideration of his individualized circumstances. He argues there have been significant nonretroactive changes in the law since he was sentenced pursuant to a mandatory guidelines scheme. I agree.

Post *Booker*, the guidelines are advisory permitting a sentencing judge in his or her discretion to sentence below the applicable guideline range after considering case-specific mitigating factors. The significance of this change in the law should not be underestimated. *See United States v. Reedy*, 678 F. Supp. 3d 859, 866 (N.D. Tx. 2024) (reducing a life sentence to time served and noting that "the inability of a defendant to have mitigating factors considered in his individual case because of mandatory Guidelines and statutory maximums—which can undermine the statutory goals of sentencing—is one of the problems that *Booker* set out to solve, and the one that § 1B1.13(b)(6) can now remedy."); *see also United States v. Kirkland*, No. ELH-94-10,

2024 WL 4529303, 2024 U.S. Dist. LEXIS 189588, at *38 (D. Md. Oct. 18, 2024) ("The shift from mandatory Guidelines to advisory Guidelines constituted a sea change in the law."). Further, as part of the individualized circumstances that could not be considered when he was sentenced under mandatory guidelines, Viera-Rivera cites his youthful age at the time of the offense, his turbulent upbringing that included mental health issues and drug addiction, and his post-sentence rehabilitation.

With respect to his age at the time he committed the offense, the evolving legal landscape regarding youthful offenders and emerging adults, can be characterized as both an important change in the law and an individual circumstance that are relevant to the decision whether Viera-Rivera's life sentence should be reduced for being grossly disparate. Indeed, the development in Supreme Court jurisprudence surrounding a defendant's age in sentencing has been significant. The Supreme Court recently reaffirmed that "youth matters in sentencing." *See Jones v. Mississippi*, 593 U.S. 98, 105, 141 S. Ct. 1307, 209 L. Ed. 2d 390 (2021). Also, in *Miller v. Alabama*, 567 U.S. 460, 472, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), the Court noted that "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes."

The courts that have tackled the issue in recent years have relied on scientific studies regarding youth and brain development to "better understand the neurological differences in young brains that can drive youthful crimes." *United States v. Johnson*, No. 05-CR-00167, 2021 U.S. Dist. LEXIS 209833, 2021 WL 5037679, at *2 (N.D. Cal. Oct. 30, 2021); *see also United States v. Lara*, 658 F. Supp. 3d 22, 31-32 (D.R.I. 2023); *United States v. Golding*, No. 05-cr-538, 2022 U.S. Dist. LEXIS 133940, 2022

WL 2985014, at *2-3 (S.D.N.Y. July 27, 2022); *United States v. Ramsay*, 538 F. Supp. 3d 407, 410 (S.D.N.Y. 2021); *United States v. Espino*, 03-cr-20051, 2022 U.S. Dist. LEXIS 174161, 2022 WL 4465096 (D. Kan. Sept. 26, 2022). "These cases draw on recent developments in neuroscience, psychology, and sociology, which demonstrate why standard penological goals apply with much less force to younger defendants in light of their immaturity, susceptibility to peer and other influences, salvageability, and dependence on family and other features of their environment that lie beyond their control." *Golding*, 2022 U.S. Dist. LEXIS 133940, 2022 WL 2985014 at *2; *United States v. Ramsay*, 538 F. Supp. 3d at 416-17 (noting that Supreme Court jurisprudence distinguishing adults from adolescents relies on factors that can be grouped into four traits: immaturity, susceptibility, salvageability and dependence). These factors bear on the sentencing of juveniles as well as defendants over 18. *See Ramsay*, 538 F. Supp. 3d at 417; *see also United States v. Sepulveda*, No. 95-cr-75-JJM-PAS, 2025 WL 70207, 2025 U.S. Dist. LEXIS 5549, at *10-11 and n.5 (D.R.I. Jan. 10, 2025) (observing that the change in the legal landscape of contemporary standards of decency about youthful offenders to include young adults between the ages of 18 and 24).

When Viera-Rivera committed the offense for which he is now serving a life sentence without the possibility of release, he was twenty-one years old. And in his submissions, Viera-Rivera makes persuasive arguments regarding each of the relevant factors which I briefly summarize and adopt. (*See* Docket No. 140 at 11-18 and the legal and scientific authority cited). For instance, with respect to immaturity, Defendant discusses how science has tried to explain the "maturity gap", that is, the gap between cognitive capacity and psychosocial maturity. These are cognitive systems that,

14

according to recent studies, develop at different schedules. Psychosocial maturity, namely the capacity to exercise self-restraint, continues to develop after adolescence and well into an individual's early adulthood. Research demonstrates that younger adults, like juveniles, tend to make riskier decisions during high-pressure, time-sensitive, emotional contexts. Thus, according to Viera-Rivera, he should be evaluated in light of these scientific developments before deciding whether he was deserving of the same punishment that a similarly situated older and more mature adult would receive for the same conduct.

      Details of Viera-Rivera's upbringing shed light on the immaturity factor as well as the rest of the factors. These details are not contested by the Government. At age 14, Viera-Rivera was placed under the care of his father, a drug dealer, who got him addicted to controlled substances, including heroin, and used him as drug mule. It is also during this time that Viera-Rivera dropped out from high school. Defendant did not have an opportunity to present arguments at sentencing to persuade the Court that as a juvenile and young adult during this period, his immaturity could help explain the conduct during the carjacking; conduct that can certainly be described as involving risky decisions during a high-pressure, time-sensitive, and emotional context.

      The same conclusion should be reached regarding the susceptibility factor. Viera-Rivera's youth made him more prone to be influenced by peer-pressure. The fact that as a young man his role model was his drug-dealing father who introduced him to heroin and used him as part of the drug trade is yet another circumstance that a Judge should be allowed to consider before imposing a life sentence. The advisory nature of the

guidelines now allows the Defendant to present, and the Court to consider, this potentially mitigating evidence.

The factors of salvageability and dependence also point in the direction of granting relief for Viera-Rivera. Again, his character at age 21 was not completely formed; on the contrary, according to research, it was still developing. Therefore, his engaging in very reckless and violent behavior cannot be deemed as conclusive evidence that he has no potential for rehabilitation. What is known today of young adults is that they are not irredeemable just because they commit serious crimes, including murder. In fact, Viera-Rivera's trajectory as he has matured and grown older, demonstrates that he did have, and continues to have, the potential for full rehabilitation. And with respect to dependence, he makes a compelling argument that he should not be judged solely by who he was and what he did when he was completely dependent on other adults, including his father, and lacked the tools to remove himself from said environment. The Court now has the discretion to consider these circumstances in deciding if Viera-Rivera should receive a reduced sentence and the extent of any such reduction.

Viera-Rivera also argues that the Court should consider the disparity between his life sentence and the national average sentence for murder as well the average sentence for said offense in the District of Puerto Rico. This argument, if meant as an independent extraordinary and compelling reason justifying a sentence reduction, was not developed beyond a footnote, (Docket No. 140 at 11, n.17), and the graph that was supposedly attached is missing. In any event, since I am finding that extraordinary and compelling reasons exist to grant relief, it is unnecessary for me to address disparity as a stand-alone basis for a sentence modification. I would only add that there is support for the notion

that a disparity, particularly one that is the product of mandatory guidelines, may constitute an extraordinary and compelling reason to reduce a life sentence. *See United States v. Aguiar*, 735 F. Supp. 3d 136, 144 (E.D.N.Y. 2024). If the argument was made as part of the larger claim that he is serving an unusually long sentence as per the policy statement, the point is well-taken that a gross-disparity may exist between the life sentence imposed and the sentence Viera-Rivera could have received through a variance if the Court had been allowed to consider his individualized circumstances. Undoubtedly, a life sentence is grossly disparate from anything less than a life sentence. *See United States v. Allen*, 717 F. Supp. 3d 1308, 1316 (N.D. Ga. 2024).

Next, I consider Defendant's post-sentence rehabilitative efforts. While rehabilitation, by itself, does not constitute an extraordinary and compelling reason to reduce a sentence, the policy statement of the Sentencing Commission states that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). In this case, Viera-Rivera has presented significant evidence of post-sentence rehabilitation in the form of over 50 educational courses completed (Docket No. 140-2), satisfactory progress reports and evaluations, as well as his participation in the Challenge Program, where he is described as having a positive impact in the overall success of said program. (Docket No. 140-1 at 3). As a mentor in the program, he is said to have used "his leadership skills to lead other inmates to the pathway of positive thinking and honest living." (*Id.*). His outstanding performance as a mentor in the Challenge Program is further highlighted by a 2022 letter prepared by the program coordinator, Dr. J.

17

Capriles-Mercado. (Docket No. 140-3). *See United States v. Kayarath*, No. 94-10128-02-JWB; 94-10123-02-JWB, 2024 WL 914059, 2024 U.S. Dist. LEXIS 39674, at *6-7 (D. Kan. Mar. 4, 2024) (defendant's significant rehabilitation included staying in the challenge program as a mentor after completing the same.).

Similarly, in relation to his work assignment as unit orderly, Viera-Rivera is described by the staff as "extremely dependable and hard working. He sets the standard for work ethic among the inmates and demonstrates excellence in all that he does." (Docket No. 140-1 at 1). Additionally, he has completed all financial obligations, the BOP psychology staff have expressed no concerns as to him and has "outstanding rapport with staff and other inmates." (*Id*. at 4-5).

While Viera-Rivera's disciplinary record is far from perfect, and includes violent incidents, the last of these occurred more than a decade ago. (Docket No. 140-1 at 4) ("VIERA-RIVERA has maintained clear conduct since 2012."). His letter to the Court as well as letters from members of the community show a changed man that has embraced the Christian faith. His good conduct for the last 13 years and his other accomplishments while serving his sentence, seem to suggest that Defendant has indeed turned his life around and that his post-sentence rehabilitation should be considered along with the other reasons that warrant that relief be granted in this case. *See United States v. Escobar-De Jesus*, No. 90-cr-130 (ADC)(HRV), 2024 WL 1230246, 2024 U.S. Dist. LEXIS 57014, at *10 (D.P.R. Mar. 22, 2024) (recommending reduction of a life sentence considering, among other things, defendant's post-sentence rehabilitation.). It is noteworthy that Viera-Rivera undertook many of these rehabilitative endeavors while serving a life sentence that, for a substantial portion of it, was without hope of release.

### *2. Dangerousness and 18 U.S.C. § 3553(a)*

Given his evolution during his incarceration, the only relevant factor that still weighs in favor of a finding of dangerousness is the nature and circumstances of the offense. It should not be minimized that a life was taken and the corresponding impact that Defendant's actions had and likely continue to have on the family and friends of the victim as well as on the community. But the record contains sufficient evidence that his history and characteristics—including his efforts at rehabilitation as outlined above—the release plan proposed that includes potential employment in the municipality of Naguabo (Docket No. 140-8), and his family support, all tip the scales in favor of a finding that his release under strict conditions of supervision will not cause an intolerable risk of danger to any specific person or the community.

Moreover, many of the applicable section 3553(a) factors are incorporated in my discussion of extraordinary and compelling reasons and danger to the community above. I have addressed the personal characteristics of the Defendant and the serious nature of the offense. A sentence of over 30 years already served, when the Defendant's history and characteristics are considered, and when compared to sentences imposed after *Booker* to similarly situated persons, is sufficient and not greater than necessary. It is a significant sentence imposed on an emerging adult with a troubled upbringing and a history of drug addiction. The time already served reflects the admittedly serious nature of the offense. In sum, there is no continued need to impose the harshest possible non-capital sentence there is in order to protect the public or promote respect for the law and deterrence. *See United States v. Ware*, 720 F. Supp. 3d 1351, 1364 (N.D. Ga. 2024) (finding that, on the whole, and without minimizing the seriousness of the offense, the

19

section 3553(a) factors including defendant's rehabilitation and lack of disciplinary record since 2007 supported a sentence modification.).

## IV. CONCLUSION

For the reasons stated, I find that Viera-Rivera has shown extraordinary and compelling reasons. It is also my opinion that a sentence reduction in this case would be consistent with the tenets of the Sentencing Commission's policy statement at U.S.S.G. § 1B1.13 and with the factors set forth in 18 U.S.C. § 3553(a). I therefore recommend that Viera-Rivera's motion for sentence reductions be GRANTED. In so recommending, I express no opinion as to the extent of any reduction, should the Presiding District Judge be inclined to follow my recommendation.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within 14 days**. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico this 23rd day of April, 2025.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE